```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Kenneth W. Littlefield

    v.                                           Civil No. 14-cv-53-LM
                                                 Opinion No. 2015 DNH 025
Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration


**O R D E R**

    Pursuant to 42 U.S.C. § 405(g), Kenneth Littlefield moves to reverse the Acting Commissioner's decision to deny his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves for an order affirming her decision.  For the reasons that follow, this matter is remanded to the Acting Commissioner for further proceedings consistent with this order.

### I. Standard of Review

    The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

>  remanding the cause for a rehearing.  The findings of
>  the [Acting] Commissioner of Social Security as to any
>  fact, if supported by substantial evidence, shall be
>  conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the

[Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material Facts (document no. 16). That statement is part of the court's record and will be summarized here, rather than repeated in full.

In August of 2011, Littlefield applied for both DIB and SSI benefits. In his application, he claimed that he had stopped working in December of 2005 because of chronic lower-back pain.

3

He claimed the following severe impairments: degenerative disc disease, spinal stenosis, post-lumbar-laminectomy syndrome, spinal-nerve scarring, chronic-pain syndrome, hypothyroidism, chronic obstructive pulmonary disease, anemia/leukocytosis, mood disorder, posttraumatic stress disorder ("PTSD"), anxiety with panic attacks, and side effects from numerous medications including narcotic pain medications.

Over the years, Littlefield has received the following diagnoses of his physical condition: disc herniation, lumbar strain, acute lumbar strain with sciatica, and chronic low-back pain.  His treatment for those conditions has included: surgery (on two occasions), medication,[1] lumbar epidural steroid injections, facet-joint injections, radio-frequency lesioning, and use of a TENS unit.[2]  Diagnoses of his mental condition include: PTSD, PTSD with a mix of mild to moderate anxiety and depression, and mood disorder not otherwise specified with both depression and anxiety.  His treatment for those conditions has

---

[1] For his back pain, Littlefield has been prescribed Vicodin, Flexeril, Percocet, Naproxen, Robaxin, Hydromorphine, Methadone, Kadian, and Fentanyl.

[2] "TENS" is an "[a]bbreviation for transcutaneous electrical nerve stimulation."  Stedman's Medical Dictionary 1946 (28th ed. 2006).

4

consisted largely of medication,[3] but he has also had some counseling.

In February of 2008, Littlefield began seeing Dr. Patrick Leong, who became his primary care physician ("PCP").  In March of 2009, Littlefield began seeing a psychiatrist, Dr. Richard Stein, for mental-health treatment.  Those doctors, and others, have provided opinions on Littlefield's ability to work.

In October of 2008, Dr. Leong wrote a letter, addressed "[t]o whom it may concern," that states:

> Mr. Kenneth Littlefield has been a patient of mine for the past year.  He is also under the care of [a] pain specialist and [a] surgeon.  He is on multiple pain meds for his chronic back pain.  Our recommendation is that he is unable to work until further evaluation and treatment.

Administrative Transcript ("Tr.") 482.  In May of 2010, Dr. Leong wrote a second letter, also addressed "[t]o whom it may concern," that states:

> Kenneth has been a patient here for the past few years.  Currently he is on multiple medications as follow: Depakone, Seroquel, Percocet, Methadone, and Robaxin.  He is followed by [a] pain specialist and [a] psychiatrist for chronic pain and bipolar disorder.

---

[3] For his mental conditions, Littlefield has been prescribed Seroquel, Zyprexa, Lorazepam, and Depakone.

5

> At this time, he is unable to perform any meaningful work due to his medical conditions and multiple medications.

Tr. 117.

In October of 2011, Dr. Burton Nault, a state-agency nonexamining reviewing physician assessed Littlefield's physical residual functional capacity ("RFC").[4] In his assessment, Dr. Nault opined that Littlefield could: (1) occasionally lift and/or carry 20 pounds; (2) frequently lift and/or carry 10 pounds; (3) stand and/or walk, with normal breaks, for a total of about six hours in an eight-hour workday; (4) sit on a sustained basis, with normal breaks, for a total of more than six hours in an eight-hour workday; and (5) push and/or pull without any limitation other than the restriction on lifting and/or carrying. See Tr. 137, 146. Dr. Nault further opined that Littlefield had no postural, manipulative, visual, communicative, or environmental limitations. See Tr. 138, 147.

On a referral by his PCP for an "evaluation of chronic pain and disability," Tr. 841, Littlefield was seen by Dr. John

---

[4] "[R]esidual functional capacity is the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). Dr. Nault actually offered two RFC assessments, one for the period from December 1, 2007, through October 17, 2011, and another he called a "current assessment," Tr. at 138, 147. The two assessments are virtually identical.

Mazur, a neurologist. In the assessment section of his progress note, dated December 29, 2012, Dr. Mazur wrote:

> The patient has severe chronic pain despite having . . . previous lumbar surgeries. Given the duration of time since he last worked and limited job skills, I would consider him to be 100% permanently disabled. Informed the patient that I would advocate on his behalf and provide documentation to this effect.

Tr. 841-42. The record does not appear to include any further documentation, such as a medical-source statement from Dr. Mazur addressing Littlefield's ability to perform work-related activities.

Moving from Littlefield's physical impairment(s) to his mental impairment(s), the record includes the results of a psychiatric review technique analysis[5] performed in October of 2011 by Dr. Patricia Salt, a state-agency nonexamining reviewing psychologist. Dr. Salt reported that Littlefield had a severe mental impairment in the form of an affective disorder.[6] See Tr.

---

[5] "The [psychiatric] review technique is used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process [described more fully below], and also serves as the backdrop for the more detailed mental RFC assessment at Step Four [also described more fully below]." Pelletier v. Colvin, C.A. No. 13-651 ML, 2015 WL 247711, at *12 (D.R.I. Jan. 20, 2015) (citations omitted).

[6] The relevant regulations define "affective disorders" as being "[c]haracterized by a disturbance of mood," that "generally involves either depression or elation." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04.

7

136, 145. However, she determined that Littlefield's affective disorder imposed only mild restrictions on: (1) his activities of daily living; (2) his ability to maintain social functioning; and (3) his ability to maintain concentration, persistence and pace. See id. She also determined that Littlefield had had no episodes of decompensation of extended duration.[7] See id. The Disability Determination Explanation form that incorporates Dr. Salt's opinion does not appear to include an assessment of Littlefield's mental RFC.

The final medical opinion in the record is a mental RFC questionnaire completed by Littlefield's treating psychiatrist, Dr. Stein, in February of 2012. Dr. Stein opined that, among other things, Littlefield had limited but satisfactory ability to: (1) remember work-like procedures; (2) carry out very short and simple instructions; and (3) understand and remember detailed instructions. See Tr. 715-16. He also opined that Littlefield was unable to meet competitive standards with regard to: (1) maintaining attention for two-hour segments; (2) working in coordination with or proximity to others without being unduly distracted; (3) completing a normal workday and workweek without

---

[7] The four factors to which Dr. Salt directed her opinion are the so-called "paragraph B" criteria, about which more will be said later.

interruptions from psychologically based symptoms; (4) performing at a consistent pace without an unreasonable number and length of rest periods; (5) responding appropriately to changes in a routine work setting; (6) dealing with normal work stress; (7) carrying out detailed instructions; (8) dealing with the stress of semiskilled and skilled work; and (9) using public transportation. See id. Finally, Dr. Stein opined that Littlefield's impairment(s) or treatment would cause him to be absent from work for more than four days per month. See id. at 717.[8]

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[8] In his decision, the ALJ stated that if fully credited, Dr. Stein's mental RFC questionnaire "would put the claimant at listing level for mood disorder and post-traumatic stress disorder/anxiety disorder." Tr. 55.

. . . .

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) but with a sit/stand option, postural occasionally stoop and crawl, has no problem with climbing or balancing, can understand, remember and carry out simple to complex tasks, deal with others, interact one on one on an occasional basis, and has a general need to work alone on his own tasks with only routine interactions with coworkers and supervisors.

. . . .

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

. . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 52, 53, 54, 56, 57. Relying upon the testimony of a vocational expert, the ALJ determined that Littlefield could perform the jobs of retail marker, storage-rental clerk, assembly-machine tender, final assembler, surveillance-system monitor, and food-and-beverage order clerk. See id. at 57.

### III. Discussion

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this case is whether Littlefield was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

### B. Littlefield's Arguments

According to Littlefield, the ALJ's decision should be reversed, and the case remanded, because the ALJ did not: (1) find that his mood disorder and medication side effects were severe impairments (at step 2 of the sequential evaluation process), or consider the effects of those impairments at subsequent steps in the evaluation process; (2) properly weigh the expert-opinion evidence or give good reasons for failing to give controlling weight to the opinions of treating sources; (3) properly apply the psychiatric review technique to evaluate his mental impairments; and (4) meet the Acting Commissioner's burden of identifying jobs in the national economy that he can still perform (at step 5 of the sequential evaluation process). Littlefield's second argument, as it pertains to Dr. Stein's opinion and the ALJ's mental RFC assessment, is persuasive and

dispositive.  That is, the ALJ's treatment of Dr. Stein's opinion entitles Littlefield to a remand.

Dr. Stein was a treating source.  The medical opinion of a treating source is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record."  20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).  In rejecting Dr. Stein's opinion, the ALJ found it "not to be supported by the objective medical evidence of record," Tr. 55, including treatment notes from Dr. Stein suggesting that Littlefield's "symptoms [were] under reasonable control with medication."  Tr. 55.  The ALJ also noted that Littlefield had stopped going to counseling, but it is not all that clear how Littlefield's decision to forego counseling has any bearing on the amount of weight the court should give to Dr. Stein's opinion.  In any event, there are several problems with the ALJ's rejection of Dr. Stein's opinion.

### 1. Prelude

As a preliminary matter, while the ALJ cloaks his rejection of Dr. Stein's RFC opinion in the language of 20 C.F.R. §§ 404.1527(c) & 416.927(c), which pertain to the issue of weighing

14

medical-opinion evidence, this case may not have given the ALJ any cause to weigh Dr. Stein's opinion in the first place. Weighing is called for when the case record contains inconsistent evidence, see 20 C.F.R. §§ 404.1520b(a) & 416.920b(a), such as contradictory RFC assessments. Here, the record included only one mental RFC assessment, Dr. Stein's, so there was nothing for the ALJ to put on the other side of the scale to measure against Dr. Stein's opinion. That, in turn, left the ALJ with no medical opinion on Littlefield's mental RFC to accept in place of Dr. Stein's opinion. Under these circumstances, the ALJ erred by making a mental RFC determination that was not supported by a medical opinion. See Jabre v. Astrue, No. 11-cv-332-JL, 2012 WL 1216260, at *8 (D.N.H. Apr. 5, 2012), report & recommendation adopted by 2012 WL 1205866 (D.N.H. Apr. 9, 2012). Moreover, the ALJ did not explain his decision not to give Dr. Stein's opinion controlling weight in the manner required by 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

## 2. Reliance Upon Inapplicable Evidence

Rather than turning to an alternative medical-source opinion on Littlefield's mental RFC, the ALJ relied on the findings he made at steps 2 and 3 of the sequential evaluation

process and his own assessment of the medical evidence. Both approaches are problematic.

### a. Step 2 & 3 Findings

As to the ALJ's reliance upon his findings at steps 2 and 3, there are two problems. For one thing, "the paragraph B criteria . . . [which are used at steps 2 and 3 to determine the severity of an impairment do] not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." Dias v. Colvin, --- F. Supp. 3d ---, ---, 2014 WL 5151294, at *13 (D. Mass. Sept. 30, 2014 (quoting Beasley v. Colvin, 520 F. App'x 748, 754-55 (10th Cir. 2013) (brackets and internal quotation marks omitted)); see also SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

The next problem is specific to this case. While the ALJ's decision does not say so directly, the ALJ necessarily relied upon Dr. Salt's psychiatric review technique to determine the severity of Littlefield's mental impairments and to determine whether they met or equaled the severity of a listed impairment. But, the ALJ's decision appears to reflect several misapprehensions concerning Dr. Salt's opinion.

To start, while the ALJ reported that "[t]he nonexamining agency program psychologist [Dr. Salt] found no severe mental

16

impairment," Tr. 53, Dr. Salt's assessment describes Littlefield's affective disorder as being a severe impairment, see Tr. 136, 145. In other words, the nonexamining agency program psychologist did find a severe mental impairment (affective disorder), just not the one the ALJ found Littlefield to suffer from (anxiety disorder). In addition, the ALJ found that Littlefield's anxiety disorder did "not meet the criteria in Section 12.06 Anxiety Related Disorders," Tr. 54, but he did so in the absence of any discussion of anxiety disorders in Dr. Salt's assessment. Dr. Salt's psychiatric review technique addressed affective disorders (listing 12.04), see Tr. 136, but did not address anxiety disorders (listing 12.06) in any way. Based upon the foregoing, there appears to be no substantial evidence supporting the ALJ's determination that Littlefield's affective disorder was not severe (at step 2), and no substantial evidence supporting the ALJ's determination that Littlefield's anxiety disorder was not of a listing level (at step 3). In light of the problems with the ALJ's step 2 and step 3 determinations, his reliance upon those determinations, when determining Littlefield's RFC, is misplaced.

### b. The ALJ's Interpretation of Medical Evidence

The ALJ's second approach to filling the gap left by the absence of a second medical opinion on Littlefield's mental RFC is equally problematic. Specifically, the ALJ based his mental RFC determination on his own evaluation of the medical record, which, as a general rule, is impermissible. See Johnson v. Comm'r of Soc. Sec., Civ. No. 11-40210-TSH, 2011 WL 10841564, at *12 (D. Mass. May 30, 2013) (quoting Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 430 (1st Cir. 1991); citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)); see also Jabre, 2012 WL 1216260, at *8-9. Because no exception to the general rule applies in this case, see id. at *8, the ALJ committed a legal error by basing his assessment of Littlefield's mental RFC on his own evaluation of the medical evidence.

### 3. The ALJ's Mental RFC Assessment

Finally, even assuming that the ALJ's evaluation of the medical evidence counted as substantial evidence, his mental RFC assessment falls short of the mark. For example, Dr. Stein opined that Littlefield's ability to carry out detailed instructions did not meet competitive standards, see Tr. 716,

but without citing any medical evidence to the contrary, the ALJ determined that Littlefield retained the capacity to "remember and carry out simple to complex tasks," Tr. 54. Similarly, while Dr. Stein opined that Littlefield's ability to work in coordination with or in proximity to others without being unduly distracted did not meet competitive standards, see Tr. 715, the ALJ determined, without referring to the medical evidence, that Littlefield could "deal with others," Tr. 54. While it is certainly the ALJ's right, and indeed the ALJ's responsibility, to resolve evidentiary conflicts, see Irlanda Ortiz, 955 F.2d at 769, there must be evidence on both sides of an issue before there can be a conflict to resolve.[9]

####  4. Summary

The bottom line is this: the ALJ's determination of Littlefield's mental RFC is not supported by substantial evidence. Accordingly, this case must be remanded. On remand, the ALJ should pay careful attention to distinguishing between the two separate mental impairments at issue in this case,

---

[9] The court also notes that while Dr. Stein opined that Littlefield would miss more than four days of work per month due to his impairment(s) or treatment – a limitations that would seem to rule out any kind of work – the ALJ did not even address that opinion, much describe substantial evidence supporting a decision not to give it controlling weight.

rather than lumping them together, as he appears to have done in his decision.  Littlefield has also raised concerns about the ALJ's analysis at step 5, but the court is confident that any errors at that step will sort themselves out on remand once the ALJ has properly formulated Littlefield's RFC.

### IV. Conclusion

For the reasons given, the Acting Commissioner's motion for an order affirming her decision, document no. 12, is denied, and Littlefield's motion to reverse the decision of the Acting Commissioner, document no. 10, is granted to the extent that the case is remanded to the Acting Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 17, 2015

cc:  Janine Gawryl, Esq.
     Robert J. Rabuck, Esq.